

727 North First Street
Suite 600
St. Louis, MO 63102
(314) 436-7559

## Confirmation of Freight Sale

| | |
|---|---|
| BASIN COMMERCE LLC | Contract #:  S 44527 |
| 540 LAKE STREET | |
| EXCELSIOR, MN 55331 | Contract Date:  Oct 11, 2016 |

**Attn:** SCOTT STEFAN

*The following confirms the terms and conditions of our sale of freight to you. Please sign and return this confirmation.*

*If you have any objections to any of such terms or conditions, you must so advise us immediately by wire or by telephone (subsequently confirmed by wire). If you fail to do so, such terms and conditions will apply to the sale even if you do not sign and return this confirmation.*

| | | | |
|---|---|---|---|
| **Total # of Barges:** | 2 Barges | | |
| **Placement Period:** | 2 Monthly from Nov 1, 2016 thru Nov 30, 2016 | | |
| **Commodity:** | Grain Product | | |
| **Minimum Weight:** | Rakes: 1400 Tons | Boxes: 1600 Tons | |
| **Origin(s):** | Winona, MN | Rate:  400 % Tariff | |
| **Destination:** | Baton Rouge thru Myrtle Grove | | |
| **Demurrage:** | **Origin** | **Destination** | |
| | 3 free days. | 3 free days. | |
| | $300 per day for the next 10 days. | $300 per day for the next 10 days. | |
| | $400 per day thereafter. | $400 per day thereafter. | |
| | Sundays are excluded during free time. | Sundays are excluded during free time. | |
| | Holidays are excluded during free time. | Holidays are excluded during free time. | |
| **Remarks:** | HI CUBE BOXES TO APPLY, WILL NEED TO BE LOADED BY 11/23 | | |

Special Provisions: (1) The standard terms and conditions attached hereto are incorporated into this contract and made part hereof; (2) The terms of this confirmation shall be binding on both parties whether signed by both parties or not except as to any changes to which seller agrees in writing prior to placement of barge(s); (3) Invoices not paid within 30 days, or not paid prior to discharging cargo if so demanded by Seller, will bear interest of 1 ½ % per month or at Seller's option the highest allowable legal interest rate.

| | | | |
|---|---|---|---|
| Buyer: | BASIN COMMERCE LLC | Seller: | SCF Marine, Inc. |
| By: | [signature] V.P. | By: | Rick Barbee |
| Date: | 10/14/16 | | |

EXHIBIT A
to Complaint for Damages
for Breaches of Contracts

# CONFIRMATION OF FREIGHT SALE

## STANDARD TERMS AND CONDITIONS

1. Purchaser warrants that it and/or its assignee will inspect the barge before loading and will not commence loading until satisfied that the barge is in a clean and seaworthy condition fit to receive cargo and does not contain any residue of any prior shipment that might taint or damage the cargo. Purchaser warrants that it and/or its assignee are solely responsible for loading cargo and will do so in a safe, expeditious and workmanlike manner so as not to cause damage to the barge, cargo or other property, pollution, damage to the environment, injury or death, or violation of any law. Purchaser warrants that, when loaded, the cargo will be in good condition, free from defect or inherent vice, and all exterior barge surfaces will be clean. Purchaser also warrants that the cargo is not a hazardous material that requires a special permit for shipping purposes, unless the permit number is provided to Seller and all requirements of the special permit will be met by Purchaser. Quantities of cargo listed on this bill of lading are Purchaser's weight, load and count.

2. If Seller's performance under this contract is interrupted, and/or cargo damage occurs as a result of conditions including, but not limited to strikes, lockouts, fire, acts of God, embargoes, governmental regulations or orders, mechanical failures, war, riots or other civil commotion, hurricane, tornado, flood or high water, drought or low water, or any other cause beyond the reasonable control of Seller, then Seller's obligation to perform shall be deemed suspended so long as performance is interrupted by such causes. After termination of the above-described condition that caused interruption or damage, Seller shall begin performing its obligations again as soon as reasonably possible, subject to mutually agreeable terms. There may be circumstances under which the existence of one or more above-described conditions may render performance impossible or impracticable, in which case Seller shall be excused from performance. Seller shall not be liable for damage caused by any of the above-mentioned conditions.

3. If Seller finds that it will be unable to place barges within the prescribed time period, for reasons other than those set forth in the preceding paragraph, Seller will advise Purchaser and Purchaser shall elect at once whether to cancel the un-placed barge or barges or extend the placement time. If Purchaser elects to cancel, Purchaser may buy substitute freight and in that event Seller's sole liability shall be to reimburse the Purchaser for such amount, if any, that the prevailing market price for freight, at the time substitute freight is purchased, exceeds the freight rate agreed to herein. Purchaser shall not buy substitute freight until Purchaser and Seller have reached mutual agreement pertaining to the then-prevailing market price, and the terms and conditions of the substitute purchase. If the prevailing market price for freight, at the time substitute freight is purchased, is less than the freight rate agreed to herein, Purchaser shall pay the difference to Seller.

4. Freight for the shipment shall be considered as earned when the barge is placed for loading. Purchaser shall pay freight and demurrage in full notwithstanding any loss or damage to cargo or the barge, or any interruption or abandonment of the voyage. Purchaser shall pay Seller's costs including attorney's fees incurred in seeking collection of any unpaid freight or demurrage. Seller shall have the right to require at time of shipment the prepayment or guarantee of freight. If Seller waives prepayment then Seller may insist that payment of freight will be made on presentation of invoice and prior to release of cargo unless Seller is provided with an indemnity bond guaranteeing payment of freight. Seller has a maritime lien on all cargo that it may assert and enforce to ensure payment of the freight and demurrage on all current en-route shipments and any earlier completed shipments for which freight or demurrage are still owed. Waiver of such lien on prior shipments does not constitute a waiver as to the cargo covered by this agreement. In the event Seller delivers cargo before payment of freight and demurrage is made, such delivery shall be a conditional delivery and shall not extinguish Seller's lien on the cargo even if such cargo has been unloaded.

5. Seller shall not be bound to transport said cargo by any particular towboat or route, or in time for any particular market, and shall not be liable for deviations or delays in shipment.

6. This is a contract of private carriage. Seller shall have no liability for loss or damage to cargo, or for direct or indirect expense or claim arising from or related to such loss or damage, until proper loading is complete and the barge has been removed from the loading facility and safely onto navigable water. Thereafter, Seller shall be liable for damage to cargo that occurs during the voyage only if such damage is shown to have been caused as a direct result of Seller's failure to properly maintain its barge in a reasonably fit condition. In such event, Seller shall pay for lost cargo based on actual value at time and place of loss, and damaged cargo based on actual loss in value measured at time and place such damage occurred, to a maximum limit of $500.00 (five hundred dollars) per ton. Seller shall not be liable for any other items of loss, damage or expense arising from or related to such cargo loss or damage including, but not limited to consequential damages and punitive or exemplary damages. Seller shall have no liability beyond that specifically stated above even if caused by its neglect or fault. Purchaser recognizes and agrees that Purchaser shall bear any loss in excess of the $500.00 per ton maximum described above and that Purchaser is free to self-insure or purchase insurance from a third-party in order to further protect itself. In addition, Seller shall be sure that towers who move the barge carry protection and indemnity, and towers liability insurance, in an amount of at least $1 million. Without limiting the generality of the foregoing, Seller shall not be liable for any losses or damages resulting from or related to deviations or delays in shipment, delays in loading, delays in unloading, long-term storage of the cargo, absence of ventilation, heating or freezing, moisture or other conditions in the cargo itself or such amount of condensation and moisture as is to be reasonably expected in steel river barges, deficiency in packaging or covering or dunnage, accidents resulting from negligent navigation, acts of war, terrorism or vandals, or other causes not related to deficiencies in the barge as described in the third sentence of this paragraph. Purchaser understands and agrees that cargo may degrade over time, for which Seller is not responsible. Notwithstanding any other provision herein, Seller shall not be liable for any loss or damage that occurs after the barge has been placed for unloading at destination. A barge that has been delivered to a fleet at destination has been placed for unloading within the meaning of this paragraph 6. There may be circumstances under which the existence of one or more of the above-described conditions, or the conditions described in paragraph 2 of these standard terms and conditions, may render performance impossible or impracticable, in which case Seller will be excused from performance.

7. Seller must be notified of cargo loss or damage immediately as a condition precedent to recovery on any claims. Documents requested by Seller must be furnished promptly. Claims arising from loss or damage to cargo, or any other claims relating in any way to this bill of lading, or to the shipment of cargo that is the subject of this bill of lading, shall be barred unless suit is instituted within nine months after such loss or damage occurred or such other claim arose.

8. Seller will carry legal liability insurance to cover all liability on its part that is described in paragraph 6 above. Seller shall not be required to carry all-risk insurance on the cargo although Purchaser may do so at its option and its cost. Seller's legal liability insurance may carry a deductible of Seller's choice. Neither the presence of such deductible regardless of amount, nor Seller's reporting of shipments to its broker, nor Seller's participation in processing or settling claims, nor any other circumstance, shall cause Seller to be deemed an insurer. Seller shall not be liable for (i) its handling of claims, whether based on allegations of bad faith or otherwise, (ii) delays in processing claims, or (iii) failure to pay claims for which it is not liable under the terms of paragraph 6.

9. Seller shall be free to "buy-in", from some other carrier, some or all of the freight that Seller has agreed to provide herein. In the event Seller arranges for another carrier to carry some or all of the cargo, Purchaser agrees that Seller shall have no liability for any loss or damage to such cargo that might occur, or for other accidents or claims relating to the shipment of such cargo. Purchaser's sole recourse to recover for any cargo loss or damage, or any other claims relating to the shipment, will be against the carrier that actually operates the barge(s) that carry the cargo, according to that carrier's bill of lading and/or other standard terms, and/or any third party that actually caused the loss or damage.

10. The rate for transportation of the cargo includes only one placement by Seller of the barge at origin and destination. Seller will cooperate in switching and placement of the barge when in its sole discretion it can do so conveniently. Seller shall have no liability for cargo damage, cargo loss or delay caused by any tower, terminal or other third party, even if Seller hired that third party, unless Seller agrees in advance in writing to bear such liability.

11. Purchaser and Consignee warrant that they and/or their assignee are solely responsible for unloading cargo at destination and will do so in a safe, expeditious and workmanlike manner so as not to cause damage to the barge, cargo, or other property, or injury or death, or violation of any law. Purchaser and Consignee will pay for the cost of removing any cargo, material or other objects left in or on the barge after unloading, other than routine amounts of loose cargo residue.

12. Purchaser warrants that it entered into this contract on its own behalf and not as agent for an undisclosed principal. Purchaser agrees that by accepting barge(s) placed by Seller and/or Seller's assignee, Purchaser has thereby agreed to be bound by all of the terms of this contract. Purchaser warrants and represents that it is authorized to bind Consignee and any later Consignee to the terms of this contract. In the event of a conflict or inconsistency, the terms of this contract shall supersede all other agreements, whether oral or written, except bills of lading issued by SCF pursuant to this Confirmation of Freight Sale.

13. The parties agree that Seller issued this contract in St. Louis, Missouri and that any dispute between Purchaser, Seller and Consignee or any later Consignee, arising from or that relates in any way to this contract, or Seller's undertaking to transport the cargo that is the subject of this contract, or loss of or damage to the cargo, or any rights or obligations between or among Purchaser, Seller and/or Consignee or any later Consignee regarding the cargo, shall be resolved in the federal court located in St. Louis unless otherwise agreed to in writing. Purchaser warrants and represents that it is authorized to bind Consignee and any later Consignee to this forum selection clause. The terms of this contract shall be interpreted according to maritime law or as to any issue for which no maritime rule exists then according to the law of the State of Missouri.

14. If Purchaser or Consignee shall breach any warranty or agreement contained herein, Purchaser agrees to hold harmless and fully indemnify and defend Seller for any loss, damage, or additional expense resulting therefrom.

15. Sales, property, added value and/or other taxes of any kind that any government agency, department or authority may charge or impose on the cargo and/or its movement are not included in the freight rate and shall be borne exclusively by the Purchaser. To the extent, if any, that Seller bears lock charges, tolls, user fees and/or similar fees and/or charges that relate to the transportation of the cargo, any increases in such charges, tolls and/or fees by any government agency, department or authority or other third party, after issuance of this document and before Seller has been fully compensated, shall be added to the freight rate.

16. The parties agree that this contract shall be valid and enforceable even if it is transmitted and/or signed in whole or in part by computer, email, fax and/or other electronic means.